Filed 12/7/23  P. v. Vasquez CA4/2

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FOURTH APPELLATE DISTRICT

# DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E082097 |
| v. | (Super.Ct.No. INF055092) |
| JOSE GUADALUPE VASQUEZ, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  John D. Molloy, Judge. Affirmed.

Jose Guadalupe Vasquez, in pro. per.; and Marta I. Stanton, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

I.

INTRODUCTION

Defendant and appellant Jose Guadalupe Vasquez stabbed Benjamin Antonio
Rodriguez to death while visiting him at Rodriguez's home. Defendant appeals from a
postjudgment order denying his petition for resentencing of his second degree murder
conviction (Pen. Code,[1] § 187) under section 1172.6 (formerly section 1170.95).
Appointed counsel has filed a brief under the authority of *People v. Delgadillo* (2022) 14
Cal.5th 216 (*Delgadillo*), requesting this court to conduct an independent review of the
record. In addition, defendant has had an opportunity to file a supplemental brief with
this court and has done so. We have considered defendant's arguments and affirm the
trial court's postjudgment order summarily denying defendant's section 1172.6 petition.
(*Delgadillo*, at pp. 231-232.)

II.

FACTUAL AND PROCEDURAL BACKGROUND[2]

On July 8, 2006, defendant visited his friend, Edgar P., at Edgar P.'s home.
Defendant was 19 years old and Edgar P. was 14. Edgar P. lived with his mother, Maria
M., and his brothers, Victor and Daniel. Alex Solis and his wife also lived with Edgar
P.'s family.

---

[1] All future statutory references are to the Penal Code.

[2] The factual background is taken from defendant's direct nonpublished appeal
following his conviction from case No. E051947. (*People v. Vasquez* (Jan. 27, 2012,
E051947) (*Vasquez I*).)

During the evening of July 8, 2006, as Solis was taking a shower, Edgar P. asked Solis for his pocketknife. Solis said he had sold it. Solis finished his shower and got dressed. Defendant was there, waiting for Solis. Edgar P. was not present. Defendant had blood on his clothing and hands. Solis remarked to defendant that it looked like defendant and Edgar P. "probably got in a fight." Defendant denied being in a fight. Solis asked defendant what happened. Defendant said he and Edgar P. had killed someone. Defendant asked Solis for gasoline "to get rid of the body" and "[t]o torch the place. [¶] [*sic*] . . . where he had just killed the fool."

Solis told defendant to leave and went to look for Edgar P. with Victor. Solis contacted Maria M. and told her to come home immediately. He told her what had happened. When Solis returned with Edgar P., defendant was still at Maria M.'s apartment but had cleaned up the blood. Maria M. spoke to Edgar P. about the incident and called the police a few days later.

On July 9, 2006, Police Officer Studdard responded to a dispatch call, reporting that Amelia Cantu had found her friend dead at an apartment unit. Studdard found Rodriguez, deceased, lying on his back on the floor, near the back door.

Police Detective Marshall arrived on the scene and searched the apartment. Marshall was assigned to investigate the crime. Marshall assigned Sergeant Lavalle to assist in the investigation. Lavalle arrived on the scene shortly after Marshall. The apartment unit was in disarray. Rodriguez's body was still on the floor. It had multiple wounds to the upper torso. There was blood spatter on the walls, floor, and furniture.

3

Rosary beads lay on the floor near the body. During a search of the apartment, the police recovered a kitchen knife with the handle bent 90 degrees.

The police also found a screwdriver on the grass outside, near the apartment front door. There was no blood on the screwdriver. No metal bar, pipe, or pole was found at the crime scene. The police only searched one of the four apartment trash cans and the trash had already been picked up by the time of the search.

On July 12, 2006, Solis spoke to Detective Marshall at the police station. Solis said that he had used methamphetamine the day he spoke to Marshall and the day of the murder. Solis had been convicted in 1995 for transporting drugs. Marshall showed Solis the knife found at the crime scene. Solis recognized it as being from a matching knife set in the kitchen. He had burned the tip of the blade to make a "bong" a few days before. When he had last seen the knife, its blade had otherwise been in good condition, with a straight blade.

DNA evidence collected from the knife matched DNA swabs taken from defendant and Rodriguez, with defendant being the major contributor of the DNA found on the knife. Rodriguez was a minor contributor. Edgar P.'s DNA was not found on the knife.

On July 12, 2006, Maria M. contacted the police. As a result, defendant was interviewed at the police station, after waiving his *Miranda* rights. The interview was recorded. The police did not notice that defendant had any significant injuries indicating he had been in a struggle. Defendant admitted he knew Rodriguez and had smoked

4

marijuana with him. Rodriguez was defendant's mother's best friend. Defendant initially denied any involvement in Rodriguez's stabbing. Defendant claimed he was in Mexicali at the time. Ultimately, defendant admitted he went with Edgar P. to Rodriguez's apartment to smoke drugs. Rodriguez was already on drugs when they arrived. Rodriguez became angry when he saw Edgar P. There were rumors Rodriguez may have made a pass at Edgar P.'s girlfriend, Rosie.

Defendant further stated during his recorded statement that Rodriguez yelled profanities at Edgar P. and swung a metal bar at defendant and Edgar P. Rodriguez struck defendant in the neck with the bar, which left a mark on his neck. While defendant was on the ground, Edgar P. threw defendant a knife. Rodriguez walked into the knife with his back, according to defendant. Defendant initially said that Rodriguez was stabbed only once and was not dead when defendant left. Defendant also claimed Edgar P. was still there after defendant left. Later, defendant admitted he stabbed Rodriguez multiple times during a struggle. He claimed that Rodriguez kept coming toward him with the bar and tried to grab the knife. Defendant stabbed Rodriguez again and Rodriguez's other stab wounds may have happened during the struggle.

At one point, Rodriguez was on top of defendant with the pole and grabbed the knife. Defendant stabbed Rodriguez, causing Rodriguez to bleed profusely. Defendant pushed Rodriguez off of him, pulled out the knife, and walked out the front door, thinking to himself, "what . . . did I just do." Defendant took the "bud pipe" they had been using. Defendant returned to Edgar P.'s apartment and told Solis what had

5

happened. Edgar P. remained at Rodriguez's apartment. Solis told defendant to take a shower and discard his bloody clothes. Defendant and Solis talked about burning the evidence.

Defendant testified at trial essentially consistent with the latter portion of his recorded statement given to the police, with a few exceptions and additions. At trial, defendant claimed he acted in self-defense when Rodriguez was killed. Defendant testified that he did not know Edgar P. had a knife until after the fight with Rodriguez began. Also, he told the police he had a screwdriver but discarded it before entering Rodriguez's house. In addition, he told the police he took a bud pipe, but this was untrue. Defendant admitted the rosary beads found in Rodriguez's apartment belonged to defendant. Defendant initially lied that they did not belong to defendant. Defendant denied referring to Rodriguez as a "fool." Defendant also claimed he wanted to call the police, but Solis told him not to. Defendant conceded he had initially lied to the police that he had gone to Mexicali but later in the interview became emotional and told the police what actually occurred.

The coroner testified Rodriguez sustained 15 stab wounds and multiple abrasions and bruises. The autopsy revealed that Rodriguez died of blood loss from a stab wound to his chest that pierced his heart. The fatal stab wound was consistent with having been stabbed with the knife recovered by the police. Rodriguez was 5 feet 10 inches tall and weighed 200 pounds. Defendant was about 5 feet 9 inches tall, and around160 pounds. At trial, defendant testified he only weighed 135 pounds. Rodriguez's wounds indicated

6

there had been a great struggle during the stabbing incident. Rodriguez tested positive for methamphetamine (.173 milligrams per liter), amphetamine (.013 milligrams per liter), and alcohol (.03). He also had a burn mark on his arm, consistent with use of a heated pipe.

A defense expert testified that the level of methamphetamine in Rodriguez's system could have led to a violent response. A defense expert testified that the level of methamphetamine present in Rodriguez's blood was sufficient to cause a person to behave in an aggressive, violent manner.

In June 2010, a jury convicted defendant of second degree murder, the lesser included offense of first degree murder (§ 187, subd. (a)) as charged in count 1. The jury also found true that defendant personally used a deadly and dangerous weapon, to wit, a knife (§ 12022, subd. (b)(1)), in the commission of the murder. The trial court sentenced defendant to 16 years to life in prison.

Defendant subsequently appealed, arguing prosecutorial misconduct and an issue relating to restitution. On January 27, 2012, in a nonpublished opinion, we concluded there was no prejudicial prosecutorial misconduct, but agreed the restitution order was unsupported by the evidence. We thus remanded the matter to the trial court solely as to the issue of restitution, with instructions that the trial court conduct a hearing to reconsider the amount of restitution. In all other regards, we affirmed the judgment. (*Vasquez I*, *supra*, E051947.)

On July 31, 2023, defendant filed a petition for resentencing pursuant to section 1172.6. In his petition, defendant declared that a complaint, information, or indictment was filed against him that allowed the prosecution to proceed under a theory of felony murder, murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime; he was convicted of murder following a trial; and he could not presently be convicted of murder because of changes made to sections 188 and 189, effective January 1, 2019. (§ 1172. 6, subd. (a)(1)-(3).) Defendant requested the appointment of counsel.

After the trial court appointed counsel to represent defendant on the petition, a hearing was held on September 1, 2023. At the hearing, the People orally requested that the trial court deny the petition because the jury was not instructed on the natural and probable consequences doctrine, the felony-murder rule, aiding and abetting, or any theory in which malice could be imputed to defendant. The prosecutor explained defendant had testified that he stabbed the victim with a knife and that it was in self-defense. Defense counsel concurred, stating: "I have read the opinion, and I've also determined in the opinion that [defendant] was the actual perpetrator. Hence, I looked up the jury instructions; no aiding and abetting, natural and probable consequence, or felony murder jury instructions were given." The trial court thereafter summarily denied the petition, without fully setting forth its reasons for the denial. Defendant timely appealed.

8

III.

DISCUSSION

After defendant appealed, appointed appellate counsel filed a brief under the authority of *Delgadillo*, *supra*, 14 Cal.5th 216, setting forth a statement of the case and a summary of the procedural background.  (See *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*); *Anders v. California* (1967) 386 U.S. 738 (*Anders*).)  Counsel considered potential issues on appeal but found no specific arguments as grounds for relief, and requests that we exercise our discretion and independently examine the appellate record for any arguable issues.  Under *Anders*, which requires "a brief referring to anything in the record that might arguably support the appeal" (*Anders*, at p. 744), counsel raises the issue of whether the trial court properly denied defendant's petition for resentencing based on the procedures established by the Supreme Court in *People v. Lewis* (2021) 11 Cal.5th 952 (*Lewis*) and section 1172.6.

We offered defendant an opportunity to file a personal supplemental brief, and he has done so.  Defendant's brief consists of conclusory statements, without any attempt to provide legal or factual support for any claim of error.  Construing defendant's response broadly reveals he is challenging the underlying conviction, claiming it was in self-defense.  He also points to his conduct while in prison, attempting to explain his poor performance and disciplinary actions.

9

A.  *Legal Background*

In *Wende*, our Supreme Court held that "Courts of Appeal must conduct a review of the entire record whenever appointed counsel submits a brief on direct appeal which raises no specific issues or describes the appeal as frivolous." (*Delgadillo*, *supra*, 14 Cal.5th at p. 221.)  The *Wende* procedure applies "to the first appeal as of right and is compelled by the constitutional right to counsel under the Fourteenth Amendment of the United States Constitution." (*Ibid.*)

In *Delgadillo*, *supra*, 14 Cal.5th 216, the Supreme Court held that the *Wende* independent review procedure is not constitutionally required in an appeal from a postconviction order denying a section 1172.6 petition for resentencing because the denial does not implicate a defendant's constitutional right to counsel in a first appeal as of right. (*Delgadillo*, at pp. 222, 224-226.)  The court further found that general due process principles regarding fundamental fairness do not compel a *Wende* independent review. (*Id*. at pp. 229-232.)  However, the court explained that if a no-issues brief is filed in a section 1172.6 appeal and the defendant then "files a supplemental brief or letter, the Court of Appeal is required to evaluate the specific arguments presented in that brief and to issue a written opinion." (*Id*. at p. 232.)  We are not required to conduct "an independent review of the entire record to identify unraised issues" but may do so at our discretion. (*Ibid*.  ["While it is wholly within the court's discretion, the Court of Appeal is not barred from conducting its own independent review of the record in any individual section 1172.6 appeal."])

10

Senate Bill No. 1437 (2017-2018 Reg. Sess.) limited accomplice liability under the felony-murder rule and eliminated the natural and probable consequences doctrine as it relates to murder to ensure a person's sentence is proportionate with his or her individual criminal culpability. (*People v. Gentile* (2020) 10 Cal.5th 830, 842-843; *Lewis*, *supra*, 11 Cal.5th at pp. 957, 971.) Senate Bill No. 1437 did this by amending section 188, which defines malice, and section 189, which defines the degrees of murder and limits the circumstances under which a person may be convicted of felony murder. (Stats. 2018, ch. 1015, §§ 2 & 3; see *Lewis*, at pp. 957, 959.) Under sections 188 and 189, as amended, murder liability can no longer be "imposed on a person who [was] not the actual killer," who "did not act with the intent to kill," or who "was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f).)

The Legislature also created a procedure for offenders previously convicted of felony murder or murder under the natural and probable consequences doctrine to seek retroactive relief if they could no longer be convicted of murder under the new law. (§ 1172.6, subd. (a); *Lewis*, *supra*, 11 Cal.5th at p. 959; *People v. Strong* (2022) 13 Cal.5th 698, 707-708 (*Strong*).) Under subdivision (a), "[a] person convicted of felony murder or murder under the natural and probable consequences doctrine . . . may file a petition" with the sentencing court to have his or her murder conviction vacated and to be resentenced on any remaining counts. (§ 1172.6, subd. (a).) After service of the petition,

11

the prosecutor shall file and serve a response. The petitioner may file and serve a reply after the response is served. (§ 1172.6, subd. (c).)

After receiving a petition containing the required information, "the court must evaluate the petition 'to determine whether the petitioner has made a prima facie case for relief.'" (*Strong*, *supra*, 13 Cal.5th at p. 708, citing § 1172.6, subd. (c).) If the defendant makes a prima facie showing of entitlement to relief, the court must issue an order to show cause and hold an evidentiary hearing. (§ 1172.6, subds. (c), (d)(3).) "If the court declines to make an order to show cause, it shall provide a statement fully setting forth its reasons for doing so." (§ 1172.6, subd. (c).) A trial court's failure to follow the procedures enacted in section 1172.6 is analyzed for prejudice under the state law standard of *People v. Watson* (1956) 46 Cal.2d 818, 836. (*Lewis*, *supra*, 11 Cal.5th at pp. 973-974.)

B. *Analysis*

In *Lewis*, our Supreme Court held, "[t]he record of conviction will necessarily inform the trial court's prima facie inquiry under section [1172.6], allowing the court to distinguish petitions with potential merit from those that are clearly meritless." (*Lewis*, *supra*, 11 Cal.5th at p. 971.) To be eligible for relief under section 1172.6, the petitioner must make a prima facie showing that he or she "could not presently be convicted of murder . . . because of changes to [s]ection 188 or 189 made effective January 1, 2019." (§ 1172.6, subd. (a)(3).)

12

Here, the trial court correctly denied defendant's petition because the record established he was convicted on a theory of murder that remains valid notwithstanding Senate Bill No. 1437's amendments to sections 188 and 189. Specifically, defendant, under penalty of perjury, admitted he personally and intentionally stabbed the victim multiple times, but did so in self-defense, a claim rejected by the jury. The purpose of the statute was "'to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life.' [Citation.]" (*People v. Cervantes* (2020) 46 Cal.App.5th 213, 221.) Defendant was the actual killer who admitted he intended to kill the victim. Based on defendant's rendition of the facts, he cannot show he could not have been convicted under sections 188 and 189.

Furthermore, defendant may not use the procedures set forth in section 1172.6 to relitigate his conviction, his sentence, or the underlying trial. Accordingly, we reject defendant's claims related to his conviction and the underlying trial.

The trial court correctly denied defendant's section 1172.6 petition for resentencing.

IV.

DISPOSITION

The trial court's postjudgment order denying defendant's section 1172.6 petition

for resentencing is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

<u>CODRINGTON</u>
Acting P. J.

We concur:

<u>FIELDS</u>
J.

<u>RAPHAEL</u>
J.

14